My name is Margaret Englehart, and I'm here on behalf of Ms. Darlene Wilson. Ms. Wilson is an 83-year-old woman who resides in rural Lassen County. She's applied for and been found eligible for supplemental security income based on a disability. The issue we're here to decide today is whether Ms. Wilson is eligible for retroactive benefits based on the fact that she received misinformation when she went to apply for supplemental security income, which caused her not to submit her application. We ask that this Court overturn the ALJ's decision and find that Ms. Wilson's date of eligibility be the date that she received this misinformation. The administrative law judge erred in his determination for three reasons. What do you do about this regulation, 416.351D? One, it says preferred evidence, and there wasn't any of that. And then two, it says other evidence, and there was other evidence. But it has this line in it, we will not find that we gave you misinformation based solely on your statements. Yes, Your Honor. First, the Social Security Administration and ourselves both believe that that is ambiguous. In regards to the Social Security's interpretation of that statute, their internal documents, their own internal regulations say that in situations where a claimant's statements, testimony is not contradicted and reasonable, there's an obligation to find for the claimant. Didn't she give the ALJ a couple of different dates? In one situation, she got the date wrong. That's correct. And we've submitted supplemental briefing on this, which discusses the fact that in most situations, getting the date wrong is not, in all situations, actually, the Ninth Circuit has held that getting the date wrong does not signify false information. And in fact, a recent decision came down in April from this Court, which says that very strongly that in situations where dates are incorrect, that's not fatal. It happens. Let's say it's not. Okay. Let's say it's not. Let's say that Rega Redhugh is not fatal because she also has her daughter's statements, and let's say the date difference is not fatal because people can be a little mixed up on the dates and still be right. Still, what bothers me is somebody has to decide what happened. And it seems like, well, it's got to be somebody, and the person that actually listened to the witnesses is better situated than we are. Absolutely, Your Honor. But the problem is, is the ALJ never made a credibility finding. Well, he wasn't saying that she was lying. He didn't think she was lying. He thought she was perfectly honest, just mistaken. Your Honor, he never said that. He never made any credibility finding or any finding that her testimony was in any way compromised. All he said was, I'm finding for the other side based on the fact that she didn't meet her burden of proof. But pursuant to the Code of Federal Relations, she did meet her burden of proof. She provided ample evidence regarding the fact that she was given misinformation. None of this testimony was contradicted. All of this evidence was supported by her statements and her witness, her daughter, and by the letter of testimony of Ms. Denise Mahoney. Paralegal at Legal Services called the same office, received the same misinformation. She presented all of this evidence, and the judge simply disregarded it. Pursuant to this, this Court has ruled consistently that in situations where you are being presented, in situations where you're being presented evidence, the ALJ has the obligation to make an express written finding if they believe in any way that the testimony is compromised. He didn't do that. He merely ignored it, which is against legal principle. What evidence is there that he ignored it? He didn't write about it. He didn't mention it. If you look at the transcript of what he said, that she didn't meet her burden. And the record is that on there were differences as to these dates. I know that may not necessarily be fatal, but what's wrong with taking that into consideration in connection with an assessment of whether she met her burden or not? He had every right to take that into consideration. But this Court has consistently held that if he takes that into consideration, he needs to make an express written finding that in some way her testimony is compromised. He didn't do that there. And it's taken as a whole. If you take her full testimony and consider it to be accurate, which in situations where it's not considered uncredible, the Court has held it should be considered as credible. Do you think that giving incredible, disbelievable testimony and not meeting your burden of proof are one and the same? No, Your Honor. But if you look at the information, this Court has never decided what the burden of proof is. And if you look at the testimony that she provided, she provides a clear picture of what occurred. She provided information about why she went to the Social Security Administration around the time period, the description of the person she told you, what information she provided them and what information they provided her. She paints a clear picture. And the only way to find that she didn't meet her burden of proof is to somehow discredit this testimony. And it was never done here. So, therefore, there's a gap in what happened with the factual statements and the legal conclusion. In a civil suit, someone files a personal injury claim. And they say, I was rear-ended at X, Y, Z intersection on June the 4th, 2002. And then there are written statements saying that it was June the 2nd, 2000. And the jury hears that, listens to the evidence, and makes a finding, returns a verdict for the defendant. What's wrong with that? Well, Your Honor, I would ask the permission to submit the supplemental briefing that just came down in April. It's the case of Stein v. Gonzalez. And what it holds is that the ability to recall precise dates of when something happened. Is that an immigration case? That's correct. And an immigration case which is in an administrative context and determining credibility. So it's directly on point to what occurred in this case. We have very specific rules in this circuit about immigration cases. Do you have a Social Security case that says that? Your Honor, it's never been decided. But what has been decided in the Social Security cases is that when you look at evidence and you deem it to be uncredible. If the judge had said, I don't – the ALJ had said, I don't believe that she remembered the date correctly. I believe there was an inconsistency which meant she didn't remember the date. He has an obligation under this circuit's case law to say that. He didn't write it. I don't get it. It seems to me that he said quite clearly that he just wasn't persuaded that this had happened. The way he puts it is he doesn't call her a liar. He doesn't say that she wasn't a credible witness. But he says that the statement is made over four years after the meeting took place. The statement lacks specificity as to such crucial details as the specific date the jury gave it. Taking all these into consideration, she has not met her burden of proof. Your Honor, that wasn't her testimony. Maybe she's – maybe this is all an attempt to tell the truth, but I'm not persuaded that it's more likely than not that this is what happened. Well, Your Honor, that wasn't Ms. Wilson's testimony. That was the testimony of her daughter. I know that. Okay. In regards to Ms. Wilson's testimony, he never said anything about the context of it. He merely said that he didn't – it didn't present – he didn't meet the burden. And it did meet the burden, and that any burden that this Court will place on it – What he says about her testimony is he says that alone wouldn't be enough. And then he says the daughter's testimony really won't cut it. And the first reason he gives is that her written statement is over four years after the event. And then he says he's just not – basically, when he says it doesn't meet the burden, what he's saying is it doesn't persuade me that it's more likely than not that this happened. Right. Well, his reason was that she didn't provide what's called preferred evidence or written evidence. And if you look at the code of Federal regulations, it doesn't require written evidence. It requires evidence that can either be written or oral. She provided an ample amount of evidence under what's considered other evidence, and that's not taken into consideration. And it's required to be taken into consideration. I guess I come back to Judge Hawkins' question. How do you know it wasn't taken into consideration? Very often, a trier of fact takes evidence into consideration and says, well, we're not persuaded. Well, Your Honor, this Court has held, and we've provided case sites to it, that if he didn't take it into consideration, if he discredited it even in his head, he's obligated to put that in writing. Otherwise, we have to take it as credible, we have to take it as valid, and we have to take it into consideration in the determination. And to simply disregard it in his head and not put that in writing is not – it's not proper and it's not fair. He needed to make an express written determination, and he failed to do that. And I look at my clock and I would ask to reserve the last minute for rebuttal. Thank you, counsel. Good morning, Your Honors. Dennis Malschein for the Commissioner of Social Security. First, I'd like to point out that credibility really is a red herring here. First, initially because the regulations require preferred evidence to document the misinformation, not just an unsubstantiated statement. Well, the ALJ presumably did find the claimant to be credible, because he didn't find her to be not credible, nor did he find the daughter to be not credible. And both of them described the same event of having been given misinformation. And here's my difficulty with the government's position, and maybe you can help me out with this. The only witnesses that there were under oath gave the same explanation of why this claimant did what she did. And looking at the surrounding context, the circumstances in which she found herself, what other possible rational, earthly reason would she have had for doing what she did, unless she had received this kind of information? In other words, contextually, as well as the fact that he did not find them to be not credible, I just don't see where else they could have come up with what happened to them. Well, Your Honor, I hope to be very clear about exactly what they testified to. They didn't testify that they were given misinformation. They both, the mother and daughter, testified that she was going to apply for SSI, and she decided not to when she was told that the State might take her home. That's a standard requirement of the Medicaid program, but it's not obviously related to SSI in any way. And so the testimony of being true is that they told me that I have to sign over my home to the State if I accept SSI and, of course, Medicaid. And that alone does not, even if deemed true, does not represent misrepresentation. What they're testifying to is perhaps an accurate summary of what happened, and they were told about the Medicaid requirement and decided not to file. They're not testifying that they decided not to file because they said she owned a home that they were living in and was not advised of the conditional benefits that existed at the time. The other thing that concerned me that I'd like you to address, the ALJ makes a great deal of the fact that they couldn't remember the name of the employee with whom they had spoken. And the regulation seems to expect that in many cases people won't remember the name. For example, in subsection 2, I can never get these subsections right, 2, small, 3, little i's, A, it talks about types of other evidence and says, if you can identify the employee, then we'll take information about these other aspects. And that seems to presume that in some cases people won't be able to remember who the employee is. Now, is it sufficient, then, for the ALJ to discount what he's hearing because the person can't remember the name? In the context of the entire situation, yes, it is, Your Honor, because we have, as the Social Security employees reported, transcript 50 to 53, normal procedures that require that there be a documentation of the actual application process, even if an application isn't filed, and that wasn't done. The documentation that could have been there and should have been there wasn't there. So we start off with not just nothing, but a lack of something that should be there in terms of the preferred evidence. Then what we have is merely a self-serving statement. Really, the only thing that's needed is self-serving. Isn't all evidence self-serving? Why on earth would somebody present evidence that wasn't self-serving? Right. And that goes to the deputant. So what does that add to say evidence is self-serving? That's true of all evidence, isn't it? Well, in this situation, the only evidence that's in favor of the claimant is transcript 62, which is a declaration of her, of the daughter, that for the first time raises the reason for not filing was I own a home, my mother owned a home she wasn't living in, and they didn't tell me about conditional benefits. That's not consistent with her testimony. It's not consistent with the testimony of the mother, which shows that in the testimony that the. None of which the ALJ said. He didn't talk about any inconsistencies. He just said. Credibility itself, again, wasn't really material here because the regulations say we will not accept purely your statement. But it wasn't purely hers. You're just telling me that the statement in her favor is her daughter's statement. So it isn't her statement. So I guess I don't understand that. Well, it adds. It adds. The daughter's statement adds very little to nothing of more probative value from the testimony. And, in fact, it's inconsistent with the daughter's testimony. And so what we have is really only that statement to overcome the normal SSA procedures and, in fact, really that statement alone would give the claimant the keys to the treasury, in effect, to pick a date and say, hey, this is when I went in, this is what they said, now pay me the money. Now, it's true that there may not be. But what do you call social security disability benefits, the keys to the treasury? What is it, 800, 900 bucks a month? I'm talking only in the terms of not a lot of money, no. But it's over the course of years. And, again, not in this individual's case. But the prophylactic reasons the Commissioner has these regulations and requirements is because a misinformation case, it's not like a disability case, it's a case where there may or may not be documentation. And we have to go back and pay based on whatever date or year the claimant can convince us was when the misinformation was given. Now, if there's no documentation whatsoever, any claimant could make up, could come in and say, no, it wasn't 94, it was 99. They could, but here we have a statement under oath by the daughter, not the claimant, and, granted, they're related to one another, who says under oath why this conceitedly start their benefits at an earlier date. The ALJ does not find the daughter to be lying. So where do we go with that? He does discount that statement because it's four years after the fact and is otherwise unsupported by the record. And, again, that's unfortunately the situation in the misinformation case. It can't be entirely subjective. You can't allow people to come in, even under a declaration under penalty of perjury, and say, oh, it was 1994, it was March, I remember. They could as easily remember 1990 or 1988. In this case, we talked, the claimant herself said, I can't remember when it was. So it sounds like the commissioner has a going-in presumption that claimants and their relatives will lie under oath because unless there's something more than their sworn statements, it's just no good. Well, that's exactly what the regulation on preferred evidence would state, is we need some real evidence, not just somebody coming in and saying. I don't get that. I don't understand why you're suggesting that the regulations presume a lie. It seems to me that people say many things that are not true when they're not lying, just because they're mistaken. It's hard to remember a lot of things, and you tend to remember things favorably to yourself. Well, Your Honor, this is. I don't really see why you're talking about the regulations as presuming a lie. I'm not talking about presuming a lie. I'm saying we need to know a lot more than just having a claimant come in and say, oh, I think it was March 94 when I applied. I would have thought it would just be a matter of does the ALJ believe it. If it's preferred evidence, then it has much more force. If it's non-preferred evidence, it's here, it has less force. He can still believe it if he chooses, though, can he? As long as it's not merely the uncorroborated statement of the claimant. Technically, the ALJ. What it looks to me like, if I'm reading the regs like, and you educate me if I'm not, is the ALJ could have chosen to accept what the mother and their daughter were saying. He could have awarded benefits. It's just that he decided it was less than 50-50 chance that that's really what happened. That's probably true, Your Honor. In the context of everything, there was a zone of choice for the administrative law judge, and he could have credited one version of the record and accepted the claimant's and their daughter's statement and then paid benefits based on the date they had chosen. But the ALJ also had the choice to not credit that and to look at the record, the whole context where we are dealing with it. But, again, you have said not credited. Those are your words that you just used. But that's not what the ALJ did. The ALJ did not say, I decline to credit the testimony or the declaration of the daughter. He never said that. I think he dismissed it as lacking probative value because it was made four years after the fact and didn't contain any details that are pertinent to what his inquiry was, which is what was the type of misinformation, exactly when, how, what was said. It could be misinformation to the claimant, but we don't know what the claimant told the SSA employees necessarily because, again, it's undocumented. And so the claimant herself has full control of the flow of information if the ALJ can't consider anything else. And here, again, though, the credibility is a red herring. I'm thinking in terms of elderly people whose memories often are not as good as they used to be, even those of us who are not elderly may not have memories as good as when we were in our 20s or teens. And I'm thinking that they can be perfectly honest, but a little confused. So you look at plausibility. And here, frankly, I thought the recollection of the mother and daughter was totally implausible until I found out that for Medicaid you really do have to sign over your house. And would this office have been advising them on Medicaid as well as Social Security? Yes, the Social Security Administration takes applications, and an SSI application is an application for California Medicaid. And so that would be a normal ñ in other words, in a normal ñ So normally in the conversation there would be talk about both things, SSI and Medicaid? That would be a normal situation. And so there would not be any misinformation. It would be accurate information given to a ñ in a normal SSI application process. This provision that the claimant is suing under applies only to misinformation where the claimant decided not to apply because, for example, they were told that some type of income was countable when it wasn't, something like that. So what you're saying is it could ñ that the person at the Social Security Administration would have to talk to her about Medicaid. That's the normal process, yes, Your Honor. And would have to tell her she has to sign over her house to the State in order to get it, her mother's house. That's something that could have happened in the normal process. Medicaid liens are a common part of the Medicaid process. But I understood what you said. It not only could have, it should have. Yes, as part of the normal process, yes, Your Honor. She inherited a house. She's not living in the house. Right. So the SSI person would have to tell her, you've got to sign over that house to the State of California in order to get the Medicaid. It would be probably not said like that because there are a variety of conditions on having to turn over a house. It's not as straightforward. But there is ñ and certainly the person at that point wouldn't be signing over the house. They would be perhaps signing an agreement that someday in the future ñ the house can only be signed over when a person's institutionalized and not coming out, for example, in a nursing home, and where there's nobody living in the home who's related and various other conditions. It's very complicated. And it's understandable that a claimant could come out of a meeting like that saying, whoa, I don't want to ñ she's on Medicare already. Basically what has to have happened here, assuming that things went more or less normally in the interview, is one of two things. Either the mother and daughter got so mad when they heard about the house that they just misunderstood and mixed up what was being told to them about Medicaid and what was being told to them about SSI, or the Social Security employee got mixed up and misspoke and said something in the context of SSI that really only applied to Medicaid. Is that right? Well, it's certainly possible, Your Honor. But what we have in the allegation at the testimony is just that they told me the State could take my house. Obviously, when they talk about the State, the State's not involved in SSI. That's the Federal program. That's not what the daughter's declaration says, though. Oh, I know the declaration is different than the testimony, interestingly, Your Honor. Yes. Did I hear you correctly just a little bit earlier to say that the application for SSI becomes an application for Medicaid? Normally, yes, Your Honor. Those are ñ It's not like there's a separate application. Not ñ I'm sure there's plenty of separate forms and separate papers. But an SSI-eligible individual is automatically eligible for coverage under the Medicaid program. If what occurred at this interview, whenever it occurred, was that the employee of the administration told Ms. Wilson that by signing this application, if you own property and are not using it, there's the potential that you could lose that property, that could have happened? That could have happened, yes, Your Honor. And if it did happen, that advice would have been accurate? That would have been accurate, yes, Your Honor. Thank you, counsel. Thank you. First off, I'd like to say that when applying for Social Security, the discussion of Medicaid does not come up until you're found eligible. What happened here was she never was found eligible. Her application was never accepted. She went there to apply, and she told them that she had this house that she was attempting to sell. And they told her she was ineligible. That's misinformation. She should have been told she was eligible, because she was eligible, based on the conditional benefit rule. The second thing, and this is an entirely probable situation, because a class action lawsuit was filed with Lassen County as one of the main offenders, because the conditional benefit rule was not being told to people coming in. This class action lawsuit was the Gretchen Teller v. Shalala, which settled in favors of claimants and required that the Social Security Administration office send out letters to their field offices explaining the conditional benefit rule, because it had been so misapplied. Excuse me, Counsel. Of course. You're way over time, so wrap it up. I think she had one minute left, and now the clock is just running random. Oh, it's up. I apologize, Your Honor. Just to conclude, there was never a credibility finding made. She proved her case, and we ask that you overture the ALJ's decision. Thank you. Thank you, Counsel. Is that what happened? Yeah. I knew she had a minute left, so I just watched. Wilson v. Barnhart is submitted. We'll hear Prasad v. Gonzales. Thank you, Your Honor.
judges: Kleinfeld, Hawkins, Graber